606 P.2d 993

**MACK FINANCIAL CORPORATION, Plaintiff-Appellant,**

v.

**Lee SCOTT (aka W. L. Scott), Individually, and W. L. Scott and Marie J. Scott, dba Scott Trucking, Defendants-Respondents.**

**No. 12716.**

Supreme Court of Idaho.

Feb. 21, 1980.

Paul M. Belnap, Salt Lake City, Utah, Craig L. Meadows of Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-appellant.

Phillip M. Barber and Jack S. Gjording of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-respondents.

BAKES, Justice.

Mack Financial Corporation, plaintiff appellant, brings this appeal from a district court judgment which denied Mack a deficiency judgment for the balance outstanding on a group of conditional sales contracts following defendant respondent Scott Trucking's default on the contracts and Mack's sale of the collateral securing the agreements. Mack contends that the ruling of the district court requiring Mack to establish its entitlement to a deficiency judgment improperly deprived Mack of the balance remaining due after sale of the collateral. Mack also maintains that the court erred in interpreting the effect of defendant respondent Lee Scott's personal guaranties of Scott Trucking's indebtedness to Mack. We affirm.

In 1967 Nevada Motor Rentals, not party to this action, purchased several Mack trucks. Plaintiff appellant Mack Financial Corporation financed the transaction and acquired security interests in the trucks securing Nevada Motor Rentals' obligations under the sales agreements. On January 19, 1970, seven of these trucks were transferred to defendant respondent Scott Trucking. The transaction was made with Mack's consent and approval, and Scott Trucking assumed Nevada Motor Rentals' obligations to Mack Financial Corporation. On January 20, 1970, defendant respondent Lee Scott executed personal guaranties for the amount owing to Mack by defendant Scott Trucking.

Scott Trucking soon became delinquent in the payments due Mack. It surrendered the trucks to Nevada Motor Rentals which in turn delivered them to Mack Financial Corporation's truck yard in Denver in February, 1970. The trucks remained in Mack's Denver yard until they were sold at public auction on January 25, 1972, nearly two years after Mack acquired possession of them. At the time of its default on the conditional sales agreements in February, 1970, Scott Trucking owed Mack $127,600 against the trucks. Mack realized $44,700 at public sale of the trucks and asserted its claim for the deficiency plus interest from the date of default in February, 1970, an amount in excess of $85,000.

The court below denied Mack a deficiency judgment against Scott Trucking as debtor and against Lee Scott individually, as guarantor of Scott Trucking's obligations to Mack. The court ruled that Mack's right to a deficiency judgment on the conditional sales agreements was governed by the provisions of Article IX of the Uniform Commercial Code, I.C. §§ 28–9–501 to –507. The court found that Mack's unexcused delay of nearly two years between repossession and sale of the trucks resulted in depreciation in the value of the collateral and constituted a failure by Mack to dispose of the collateral in a commercially reasonable

manner. The court ruled that because Mack had failed to prove that it had disposed of the repossessed collateral in a commercially reasonable manner it was not entitled to a presumption, to which the court thought it otherwise would have been entitled, that the sale price was equal to the value of the collateral at the time it was obtained by the creditor.

The district court analyzed the decisions from the various jurisdictions which have addressed the effect of a creditor's commercially unreasonable disposition of collateral on the creditor's right to recover a deficiency judgment. It concluded that the better rule in such cases was that such a creditor was entitled to a deficiency judgment, but that it had the burden of proving the fair market value of the collateral at the time it obtained possession. That value would then be used to calculate the balance owing on the secured transaction by the debtor. The district court concluded that because Mack failed to prove the fair market value of the trucks at the time it obtained possession of them in February, 1970, defendant Scott Trucking was entitled to a presumption that the trucks were equal in value to the balance owed on the contracts and that Scott Trucking therefore owed Mack nothing further on the contracts.

The court also denied Mack a judgment against Lee Scott, as guarantor, for the alleged deficiency. The court ruled that the guaranties executed by Scott only guaranteed payment of any deficiency owed Mack by the debtor, Scott Trucking. Because it determined that Scott Trucking owed no deficiency to Mack, the court held that Lee Scott, as guarantor of Scott Trucking's obligations to Mack, had no liability under the guaranties.

### I

Plaintiff appellant Mack Financial Corporation urges on appeal that the district court erred in its analysis and application of the law governing a secured creditor's right to a deficiency judgment following repossession and sale of the collateral securing the conditional sales agreement. Mack argues that the effect of the court's rulings was to grant the debtor, Scott Trucking, a setoff on Mack's claim for a deficiency without requiring Scott Trucking to prove its entitlement to the setoff.

Under the provisions of Article IX of the Uniform Commercial Code a repossessing creditor must give notice to the debtor of the time and place of a public sale of the collateral or the time after which a private sale will be effective. Further, "every aspect" of the creditor's disposition of the collateral repossessed after a debtor's default in a secured transaction "including the method, manner, time, place and terms must be commercially reasonable." I.C. § 28–9–504(3). However, nowhere does the code specify the consequences of a creditor's failure to meet the two requirements of proper notice and commercially reasonable disposition. Courts have reached varying results in cases where a creditor has failed to comply with the code's provisions governing disposition of the collateral. *See, generally,* J. White & R. Summers, Handbook of the Uniform Commercial Code, §§ 26–11, 26–15 (1972); Note, A Creditor's Right to a Deficiency Judgment Under Article 9 of the Uniform Commercial Code: Effect of Lack of Notice, 42 Brooklyn L.Rev. 56 (1975).

One line of authority holds that the creditor's failure to comply with the requirements governing disposition of repossessed collateral serves as an absolute bar to the creditor's right to a deficiency judgment. *E. g., J. T. Jenkins Co. v. Kennedy,* 45 Cal.App.3d 474, 119 Cal.Rptr. 578 (1975); *Barnett v. Barnett Bank of Jacksonville,* 345 So.2d 804 (Fla.D.Ct.App.1977); *Gurwitch v. Luxurest Furniture Mfg. Co.,* 233 Ga. 934, 214 S.E.2d 373 (1975); *Herman Ford-Mercury, Inc. v. Betts,* 251 N.W.2d 492 (Iowa 1977); *Gateway Aviation, Inc. v. Cessna Aircraft Co.,* 577 S.W.2d 860 (Mo. App.1978); *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803 (Utah 1979). These courts view the code's requirements of proper notice to the debtor of the proposed disposition and commercially reasonable disposition of the collateral as conditions precedent to the creditor's right to recover a deficiency judgment.

A second line of authority, adopted by but a few courts, permits the secured party to recover a deficiency judgment despite his non-compliance with the requirements of notice and commercially reasonable disposition, subject to the debtor's rights under U.C.C. § 9–507(1) (I.C. § 28–9–507(1)) to recover from the secured party any loss occasioned by the creditor's failure to comply with the code. Under this approach the debtor's claim for damages is generally asserted as a counterclaim in the creditor's action for a deficiency judgment. *See, e. g. Leasco Computer, Inc. v. Sheridan Industries, Inc.*, 82 Misc.2d 897, 371 N.Y.S.2d 531 (N.Y.Civ.Ct.1975); *Commercial Credit Corp. v. Wollgast*, 11 Wash.App. 117, 521 P.2d 1191 (1974); *Grant County Tractor Co. v. Nuss*, 6 Wash.App. 866, 496 P.2d 966 (1972).

A third line of authority embodies the analysis utilized by the district court below and is that which we adopt. Under this approach, failure of the secured party to dispose of the repossessed collateral in a commercially reasonable manner or to give proper notice of the proposed disposition to the debtor does not constitute an absolute bar to the secured party's recovery of a deficiency judgment. However, where the requirements in I.C. § 28–9–504(3) are not met by a secured party, it will be presumed that the fair market value of the collateral at the time of repossession was equal to the outstanding debt and that the debtor owes no deficiency. The secured party will then have the burden of proving the actual fair market value of the collateral at the time of repossession in order to establish its right to a deficiency judgment. *E. g., Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co-Alaska, Inc.*, 568 P.2d 1007 (Alaska 1977); *Savings Bank of New Britain v. Booze*, 34 Conn.Sup. 632, 382 A.2d 226 (1977); *Levers v. Rio King Land & Investment Co.*, 560 P.2d 917 (Nev. 1977); *Clark Leasing Corp. v. White Sands Forest Products, Inc.*, 87 N.M. 451, 535 P.2d

1077 (1975); *Hodges v. Norton*, 29 N.C.App. 193, 223 S.E.2d 848 (1976).

In our opinion, to automatically bar any deficiency judgment to the secured party because it improperly disposed of the collateral or failed to notify the debtor of the proposed disposition is penal in nature and contrary to the remedial purposes of the U.C.C. *See* I.C. § 28–1–106(1).[1] *Clark Leasing Corp. v. White Sands Forest Products, Inc., supra.* However, the second approach which places the burden squarely upon the debtor to prove a loss suffered as a result of the secured party's failure to comply with the code penalizes the debtor for the creditor's misbehavior, ignores the realities of the typical debtor/creditor relationship, and provides little incentive to the secured party to comply with the code provisions.

The third approach used by the district court below and which we adopt today requires the secured party in an action for a deficiency judgment to prove that it complied with the requirements of notice and commercial reasonableness contained in I.C. § 28–9–504(3). If the secured party proves compliance it is then entitled to a deficiency judgment if a deficiency exists. However, if the court finds that notice of the sale to the debtor was defective or that sale of the collateral was not commercially reasonable, it will be presumed that the fair market value of the collateral at the time of repossession was equal to the debt. If unrebutted this presumption will deny the secured party a deficiency judgment. The burden is then on the secured party to prove by competent evidence the fair market value of the collateral at the time of repossession. If the secured party carried this burden it will become entitled to a deficiency judgment. We believe that this approach is just and remedial in nature and adequately takes into account the realities of the debtor/creditor relationship.

---

1. "28–1–106. REMEDIES TO BE LIBERALLY ADMINISTERED.—(1) The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law.

. . . ."

■ The court below found that Mack's unexcused delay of nearly two years between its repossession of the collateral and its sale of the collateral at public auction resulted in a reduced price as a consequence of depreciation and constituted a commercially unreasonable disposition of the collateral in violation of the requirements of I.C. § 28–9–504(3). The trial record establishes that the collateral did depreciate between the time of repossession in February of 1970 and Mack's sale of the trucks at public auction in January, 1972, and readily supports the court's finding that the disposition was commercially unreasonable.[2] The record also supports the trial court's finding that Mack failed to prove the actual fair market value of the collateral at the time of its repossession in February, 1970. Consequently, it is to be presumed that the collateral at the time of its repossession was equal in value to the debt, and the trial court's denial of a defi-

ciency judgment against Scott Trucking is therefore affirmed.

## II

Appellant Mack Financial Corporation also argues that because defendant respondent Lee Scott's guaranties of Scott Trucking's obligations to Mack were absolute and unconditional, the trial court erred in determining that Lee Scott's individual liability as guarantor was limited to the extent of Scott Trucking's liability for a deficiency judgment. Mack argues that Lee Scott was an unconditional guarantor and had an absolute contractual responsibility to pay Scott Trucking's obligations upon the debtor's default and that the defense of commercial unreasonableness is unavailable to Lee Scott simply because the guaranties were unconditional.[3] Mack contends that the district court made Lee Scott's liability as a guarantor depend on Mack's ability to assert a deficiency judgment against Scott Trucking, the principal obligor, and thereby

2. Although I.C. § 28–9–507(2) provides that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner," this statute does not preclude a finding of commercial unreasonableness in this case. Official comment 6 to I.C. § 28–9–504 states that an unjustified delay in disposition of the collateral might well make the disposition commercially unreasonable. The adequacy or insufficiency of the price for which collateral is sold is a "term" of the sale which, although not dispositive of the issue, is relevant to a determination of the commercial reasonableness of the disposition. *See, e. g., Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co-Alaska, Inc.,* 568 P.2d 1007 (Alaska 1977); *Jones v. Bank of Nevada,* 91 Nev. 368, 535 P.2d 1279 (1975); *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803 (Utah 1979); J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code, § 26–11 (1972).

The trial judge was acutely aware of Mack's contention that I.C. § 28–9–507(2) would preclude a finding that the two year delay in selling the collateral could result in a commercially unreasonable sale. In its memorandum opinion the court stated:

"However, Section 9–507(2) surely does not mean that the creditor can elect to retain the collateral until it loses all value because it has become obsolete or because of its age

and then recover a deficiency judgment for the full balance of the price still owing. It would appear that this provision was designed to protect the creditor from the effects of factors affecting price which are beyond the creditor's control, such as rapidly fluctuating market price. It would not seem reasonable, however, to extend the protection of this section to factors within the creditor's control which seriously affect the resale price of the collateral. Neither can this section be fairly construed to mean that the requirements of Section 9–504(3) that the 'time' and 'terms' must be commercially reasonable are to be ignored. A fair construction of these provisions is that the creditor must sell the collateral within a commercially reasonable time and on commercially reasonable terms if he does not elect to retain the collateral in satisfaction of the obligation."

3. On appeal, respondent Scott asserts an additional ground for affirming the trial court's decision of non-liability on the guaranties, alleging that Scott Trucking, the debtor in the U.C.C. filings, and Scott, the guarantor, are one and the same individual, and therefore there can be no valid guaranty transaction. Mack Financial, on the other hand, asserts that the U.C.C. documentation shows that Scott Trucking is a separate entity from Lee Scott individually. In view of our disposition of the guaranty issue we do not address this factual issue.

read non-existent conditions into the guaranties. We do not agree with Mack's assertions.

The term "unconditional guaranty" has an established meaning within the realm of commercial law which does not comport with that which appellant Mack Financial Corporation would have us apply.

"Contracts of guaranty are divided into two kinds. One is absolute or unconditional and the other is conditional. An absolute guaranty is an unconditional undertaking on the part of the guarantor that the person primarily obligated will make payment or will perform, and such a guarantor is liable immediately upon default of the principal without notice. A conditional guaranty is an undertaking to pay or perform if payment or performance cannot be obtained from the principal obligor by reasonable diligence. An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor. . . . Both presuppose default by the principal." *United States v. Willis*, 593 F.2d 247, 254 (6th Cir. 1979), *quoting Pavlantos v. Garoufalis*, 89 F.2d 203, 206 (10th Cir. 1937). *See Commercial Credit Corp. v. Chisholm Bros. Farm Equipment Co.*, 96 Idaho 194, 525 P.2d 976 (1974); A. Stearns, The Law of Suretyship, § 4.7 (5th ed. 1951); 38 C.J.S. Guaranty § 7 (1943).

The question to be decided is whether an unconditional guarantor may avail himself of the defense of the commercial unreasonableness of the creditor's disposition of collateral securing the obligation in an action by the creditor against the guarantor. The courts which have addressed the question have held that where the actions of the creditor impair the value of the collateral in its possession which secures an obligation guaranteed by a guarantor, either absolute or conditional, the guarantor will be discharged to the extent of the loss occasioned by the creditor. *See, e. g., United States v. Willis, supra; United States v. Conrad Publishing Co.*, 589 F.2d 949 (8th Cir. 1978);

*Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967); *Scottsdale Discount Corp. v. O'Brien*, 25 Ariz.App. 320, 543 P.2d 158 (1975); *D. W. Jaquays & Co. v. First Security Bank*, 101 Ariz. 301, 419 P.2d 85 (Ariz. App.1966); *Commercial Discount Corp. v. Bayer*, 57 Ill.App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926 (1978); *Fidelity Savings Bank v. Wormhoudt Lumber Co.*, 251 Iowa 1121, 104 N.W.2d 462 (1960); *Sterling Factors Corp. v. Freeman*, 50 Misc.2d 715, 271 N.Y.S.2d 343 (N.Y.Sup.1966), *aff'd* 27 A.D.2d 956, 279 N.Y.S.2d 577 (N.Y.Sup.1967); *Mutual Finance Co. v. Politzer*, 21 Ohio St.2d 177, 256 N.E.2d 606 (1970); *Zions First National Bank v. Hurst*, 570 P.2d 1031 (Utah 1977).

The rationale for the above rule is explained in *Mutual Finance Co. v. Politzer, supra*. There a chattel mortgagee failed to comply with Ohio's statutory notice requirements governing disposition of repossessed collateral and was thereby precluded by statute from asserting a deficiency judgment against the debtor. The Ohio Supreme Court ruled that as a result of its failure to comply with the notice requirements, the creditor was also barred from proceeding against an absolute and unconditional guarantor of the indebtedness for a deficiency judgment.

"[I]f a guarantor of the indebtedness secured by a chattel mortgage is not given a defense against recovery of a deficiency where the mortgagee has not complied with the [statutory] notice requirements . . ., then, after paying the judgment for that deficiency, the guarantor will be allowed to recover a judgment from the mortgagor for the amount paid. This is because the law implies an obligation of a principal debtor to reimburse his guarantor for any amount that the guarantor is required to pay on the guaranteed indebtedness. *State v. Blake* (1853), 2 Ohio St. 147, 150; *Hecker v. Mahler* (1901), 64 Ohio St. 398, 412, 60 N.E. 555; 38 C.J.S. Guaranty § 111, p. 1298; 26 Ohio Jurisprudence 2d 350, Section 39; 38 American Jurisprudence 2d 1136, Section 127. See *Gholson v. Savin* (1941), 137 Ohio St. 551, 556, 31 N.E.2d 858; *Poe v. Dixon* (1899), 60 Ohio St. 124, 131, 54 N.E. 86; 50

American Jurisprudence 1049, Section 221.

"Thus, if the guarantor is not given a defense against the chattel mortgagee's claim for a deficiency where the chattel mortgagee has not complied with the [statutory] notice requirements . . ., the chattel mortgagor will not receive the protection against his mortgagee that [the statute] was designed to give him. "As stated in the opinion by Ranney, J., in a comparable situation in *State v. Blake, supra* (2 Ohio St. 147), at 151: " 'Whatever * * * amounts to a good defense to the original liability of the principal, is a good defense for the sureties when sued * * *.

" 'Otherwise, the principal would be indirectly deprived of the benefit of a valid defense against the creditor, by being compelled, in effect, to respond through his sureties; or the sureties would be deprived of their right to reimbursement from the principal, and thus one or the other be compelled to lose the rights which the law had secured to them.' " *Mutual Finance Co. v. Politzer*, 21 Ohio St.2d 177, 256 N.E.2d 606, 610–11 (1970).

As noted in *Politzer,* the protection which is given the guarantor is merely a necessary incident of the protection the chattel mortgage statutes are designed to give the primary debtor.

Appellant Mack Financial Corp. urges us that the New Mexico case of *American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975), compels reversal of the district court's conclusion that defendant respondent Lee Scott is not liable for the deficiency judgment under the contracts of guaranty. Our reading of the *Covolo* case finds no support for Mack's contentions. In *Covolo,* the New Mexico Supreme Court held that the defendant guarantors were not relieved from liability under their personal unconditional guaranties as a result of the plaintiff bank's failure to perfect a security interest in a liquor license which secured the principal debtor's obligation to the bank. It was not disputed

that but for the bank's failure to record the liquor license security interest the proceeds from the license, together with the proceeds available to the creditor in the debtor's bankruptcy proceedings, would have been sufficient to extinguish the guarantor's liabilities to the bank. The New Mexico Supreme Court reversed a trial court ruling which held that the bank's failure to exercise reasonable means to protect the rights of the guarantors, *i. e.,* failure to perfect the security interest, barred award of a deficiency judgment against the guarantors. Appellant Mack Financial Corporation argues that this case stands for the principle that the defense of commercial unreasonableness, contained in Article IX of the U.C.C. and available to the principal obligor in an action for a deficiency judgment, is unavailable to an absolute and unconditional guarantor of the obligation. The case, however, stands for quite a different rule of law than that asserted by Mack. The New Mexico Supreme Court expressly agreed with the lower court that a creditor owes an absolute and unconditional guarantor a "good faith obligation to exercise reasonable means to protect the rights of the guarantors; in this case, by timely perfecting the security interest." 540 P.2d at 1297. However, the court then looked to the guaranty agreements themselves and found in them an express and unambiguous waiver by the guarantors of any rights to any security for the obligation which the creditor bank may acquire.

"From the documents, we observe that the Bank was not, as a prerequisite to the Guarantors' liability, obliged to take any security, although it had a right to do so. No provision of the guaranties requires the Bank to perfect security taken or otherwise deal with it in any particular way. The Guarantors waive their rights to subrogation, the very right they now claim was impaired, and waive and release any claims to the security and 'any benefit of, and any right to participate in any security now or hereafter held by Bank.' The Bank has the right to 'waive and release' the security at any time without the waiver or release affecting the Guarantors' obligation to pay. . .

". . . Where a guarantor or surety expressly and unequivocally consents to a waiver or release of his rights in the collateral, he will not be heard to complain of the failure of the guarantee to perfect the security interest therein in the first instance." *American Bank of Commerce v. Covolo*, 540 P.2d at 1298–99. Lee Scott's guaranties contain no such waivers. The *Covolo* decision is inapplicable to the case at bar.

■ We hold, consistent with the above cited cases, that the justified denial of a deficiency judgment against the principal obligor discharged the guarantor from liability for any such deficiency. Under these circumstances Mack is precluded from recovering under the guaranties whether they are characterized as absolute or conditional.

The district court's judgment is affirmed. Costs are awarded to respondent.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.