LAMP FAIR, INC., Plaintiff, Appellee,

v.

Pedro V. PEREZ–ORTIZ, et al., Defendants, Appellants.

LAMP FAIR, INC., Plaintiff, Appellant,

v.

Pedro V. PEREZ–ORTIZ, et al., Defendants, Appellees.

Nos. 88–1333, 88–1334.

United States Court of Appeals, First Circuit.

Heard June 6, 1989.

Decided Oct. 25, 1989.

David Efron with whom Rolando A. Silva and Bernardo Vazquez, Rio Piedras, P.R., were on brief for Lamp Fair, Inc.

Jorge P. Sala with whom Law Offices of Jorge P. Sala, San Juan, P.R., was on brief for Pedro V. Perez–Ortiz, et al.

Before BREYER, REINHARDT,[*] and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

Does Article 9 of the Uniform Commercial Code permit a secured creditor, over the objection of the debtor, both to retain collateral for the creditor's own use and also to obtain a deficiency judgment? We believe that, in the circumstances of the present case, the answer is "no." Accordingly, we reverse the judgment of the district court.

[*] Of the Ninth Circuit, sitting by designation.

# I.

### Relevant Background Facts

The plaintiff in this diversity case, Lamp Fair, Inc., sold its store to the defendant, Pedro Perez Ortiz, and Perez Ortiz failed to pay the full price. Lamp Fair then repossessed the store, kept it, and sued Perez Ortiz for the "deficiency" between Lamp Fair's valuation of the store and what Perez Ortiz still owed. A Security Agreement between the parties provides that Connecticut law governs. Connecticut has enacted the Uniform Commercial Code, Conn.Gen. Stat. §§ 42a–9–501 *et seq.*, (see attached Statutory Appendix), and so we must interpret the relevant provisions of that Code to determine whether or not Lamp Fair can obtain a deficiency.

To be more specific, we take the following factual background as relevant to this appeal:

a. On July 1, 1985, Pedro Perez Ortiz and Lamp Fair, Inc., made a contract. Perez Ortiz bought Lamp Fair's lighting fixture store located in Orange, Connecticut. Perez Ortiz promised to pay $327,000; in return he received furniture, fixtures, equipment, inventory, goodwill, and covenants not to compete.

b. Perez Ortiz paid Lamp Fair $50,000 at the time of the sale. He signed notes promising to pay the remaining $277,000 over time. He and Lamp Fair also signed a Security Agreement, intended to make certain that Perez Ortiz would pay this money. The Security Agreement gave Lamp Fair a secured interest in the store as collateral for the notes.

c. After a few months had passed, Perez Ortiz decided he could not, or would not, pay the additional money he owed under the contract and notes. On December 26, 1985, he returned the store—inventory, fixtures, and all—to Lamp Fair.

d. Lamp Fair immediately began to operate the store. In January 1986 Lamp Fair sent Perez Ortiz a bill for $131,000, which, it said, represented the difference between a) the money Perez Ortiz still

owed under the contract and notes, and b) the value of the store and inventory, which he had returned.

e. Perez Ortiz refused to pay the $131,-000. Lamp Fair then brought this suit. After a trial before a magistrate, the district court entered a judgment in Lamp Fair's favor and against Perez Ortiz for $65,000. Both sides now appeal.

## II.

### *The Law*

Perez Ortiz argued at trial that his return of the store in December, and Lamp Fair's acceptance of the store, amounted to a rescission of the July contract. That is to say, it amounted to an agreement between the parties that Lamp Fair would accept the store back and, in return, would forgive Perez Ortiz's still outstanding debt. The magistrate found, however, that there was no such rescission or new agreement. He found that Lamp Fair, while accepting the store, did not promise to forgive any still outstanding debt. The magistrate's conclusion on this issue was not "clearly erroneous," and we accept it as lawful. *See* Fed.R.Civ.P. 52(a).

If there was no rescission of the contract, however, the original contract, notes and, in particular, the Security Agreement govern the legal relation between the parties. The Security Agreement set out what would happen if Perez Ortiz defaulted on his obligation to pay the remainder of the purchase price (as he did). It provided that Lamp Fair could require Perez Ortiz to assemble the collateral, and that Lamp Fair could then take possession of it (*i.e.*, the store), which is just what happened. The Agreement also provided that Lamp Fair would have "all the remedies of a Secured Party under the Uniform Commercial Code of Connecticut." In light of this last statement in the Agreement the magistrate should have looked to the Uniform Commercial Code (as adopted by Connecticut) to determine whether or not Lamp Fair was entitled to more than it had already received—the $50,000 down payment, the monthly payments through December, and the returned store. The magistrate failed

to do this. We have examined Connecticut law ourselves, however, and we conclude that Lamp Fair cannot recover a deficiency.

## A.

Article 9 of the Uniform Commercial Code sets forth the remedies available to a secured party. It gives a secured party, such as Lamp Fair, three basic options after default. *See* 2 J. White and R. Summers, *Uniform Commercial Code* 570. (3d ed. 1988). Each of these options, while permitting the creditor under some circumstances to obtain the collateral, contains safeguards to assure the debtor that the secured party will not take unfair advantage of the situation and that the value of the collateral will be fairly ascertained.

1. *Judgment.* The secured party may simply sue on the note itself; that is to say, he "may reduce his claim to judgment ... by any available judicial procedure." U.C.C. § 9–501(1); Conn.Gen.Stat. § 42a–9–501(1). At a judicial sale of the debtor's property (which would not be governed by the Code), the secured party may buy the collateral himself, and he can look to the debtor's other property to satisfy any remaining debt. U.C.C. § 9–501(5), § 9–501 comment 6. A secured party choosing this option may take possession of the collateral prior to obtaining judgment, but only to preserve it as security for the debt. *Kimura v. Wauford,* 104 N.M. 3, 715 P.2d 451, 453 (1986). He does not own the collateral; he may use it only "for the purpose of preserving the collateral or its value" for future disposition. U.C.C. § 9–207(4); *Wade v. Sport Concession Enterprises, Inc.,* 138 Ga.App. 17, 225 S.E.2d 488, 489 (1976). It would be "unfair to the debtor to allow a creditor to take possession at all, if the creditor never intended to dispose of the security." *Kimura,* 715 P.2d at 454.

Lamp Fair cannot look to this "judgment option" to support its claim to a "deficiency judgment," because Lamp Fair did not choose this option. The record makes clear that Lamp Fair has not sought a judicial sale of the store, nor did Lamp Fair take possession of the store simply for the pur-

pose of preserving it or its value for future disposition. Rather, Lamp Fair intended to keep the store for its own use, and to obtain a deficiency judgment as well.

2. *Retention.* The secured party's second option after default is to "retain the collateral in satisfaction of the obligation." U.C.C. § 9–505(2). The Code makes clear, however, that retention of the collateral normally *completely satisfies* the debt; the secured party *must abandon* any claim for deficiency (unless the debtor signs a written statement permitting such a claim, which Perez Ortiz did not do). U.C.C. § 9–505, comment 1; 2 J. White and R. Summers, *Uniform Commercial Code* 585; *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771 (Tex.1982). The Code also states that the secured party must give notice of its intention to retain the collateral in satisfaction of the obligation, so that the debtor may object to retention and demand that the collateral be sold. Lamp Fair did not give this notice; it did not consciously choose this option.

3. *Disposition.* Section 9–504 sets forth the secured creditor's remaining option. It says that he "may sell, lease or otherwise dispose of any or all of the collateral ... by public or private proceedings." After doing so, he must "account to the debtor for any surplus," and "the debtor is liable for any deficiency." Every aspect of the disposition must be "commercially reasonable." In addition, the secured creditor must give the debtor notice of when the sale or other disposition will take place. The secured creditor can buy the collateral himself at any "public sale," but he cannot buy it at a "private sale" unless the collateral is "of a type customarily sold in a recognized market or ... the subject of widely distributed standard price quotations." U.C.C. § 9–504(1)–(3). These rules in part seek to protect the debtor, for they help prevent the creditor from acquiring the collateral himself at less than its true value or unfairly understating its value to obtain a greater-than-warranted deficiency judgment. 2 J. White and R. Summers, *Uniform Commercial Code* 590, 599 (3d ed. 1988); 1A P. Coogan, W. Hogan, D. Vagts & J. McDonnell, *Secured Transac-*

*tions Under the Uniform Commercial Code* § 8.04(2)(c) at 8–97, § 8.06(2) at 8–123 (1989); *Ocean National Bank of Kennebunk v. Odell,* 444 A.2d 422, 425 (Me.1982).

### B.

Given these provisions of Connecticut law, Lamp Fair, in our view, cannot both retain the collateral and also obtain a deficiency judgment. We can reach this conclusion through either of two alternative lines of reasoning.

■ First, the majority of courts that have dealt with this issue would simply hold that Lamp Fair's conduct in retaining and operating the store on a permanent basis brings the transaction within the scope of the § 9–505(2) "retention option," irrespective of whether or not Lamp Fair consciously chose to invoke this option. *See, e.g., Shultz v. Delaware Trust Co.,* 360 A.2d 576, 578 (Del.Super.1976) (retention of collateral for five years may be found to be in satisfaction of obligation despite secured party's protestations to the contrary); *Millican v. Turner,* 503 So.2d 289, 291 (Miss.1987) (adopting "majority position" that creditor who retains collateral for unreasonably long period is deemed to have retained in satisfaction); *Swanson v. May,* 40 Wash.App. 148, 697 P.2d 1013, 1015–16 (1985) (same); *Schmode's, Inc. v. Wilkinson,* 219 Neb. 209, 361 N.W.2d 557, 559 (1985) (secured party who used collateral for nearly three years elected to retain in satisfaction); *Haufler v. Ardinger,* 28 U.C.C. Rep. Serv. 893, 896–97 (Mass.App. 1979) (use of collateral for 38 months is election to retain barring deficiency); *In re Boyd,* 73 B.R. 122, 124–25 (Bankr.N.D.Tex. 1987) (use of collateral for three months deemed retention in satisfaction). *See also* 2 J. White and R. Summers, *Uniform Commercial Code* 588. These courts reason that the Code intends "to put the creditor to an election to either sell the repossessed collateral pursuant to Section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to Section 9.505." *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d at 771–72 (creditor

who retained and then scrapped collateral deemed to have retained in satisfaction of debt). The secured creditor cannot both avoid a more "objective," market-based, valuation of the collateral and also obtain an additional "deficiency judgment" remedy (unless the debtor expressly consents).

We note, however, that a minority of courts, including the Second Circuit in a rather different context, have written that § 9–505(2) does not apply when the secured creditor, wishing it not to apply, does not fulfill its procedural prerequisites (*i.e.*, does not give notice). *See Warnaco, Inc. v. Farkas*, 872 F.2d 539, 544–45 (2d Cir.1989) (Winter, J.) (predicting Connecticut would not follow cases applying § 9–505(2) where creditor did not give written notice of intent to retain collateral in satisfaction of debt); *S. M. Flickinger Co. v. 18 Genesee Corp.*, 71 A.D.2d 382, 423 N.Y.S.2d 73, 76 (1979); *In re Nardone*, 70 B.R. 1010, 1016–17 (Bankr.D.Mass.1987). In effect, these courts have refused to "force" § 9–505(2) upon an unwilling secured creditor. Since Lamp Fair wishes to obtain a deficiency judgment, it is such an "unwilling creditor."

Our second, alternative, line of reasoning would accept this minority view; it would start from *Warnaco's* premise that § 9–505(2)'s "retention option" does not apply because an unwilling Lamp Fair did not give the required notice. Following this line of reasoning, we should note that the transaction must fall within the scope of the remaining "disposition option." This option, under § 9–504, does permit a creditor to obtain a deficiency judgment. But, regardless, Lamp Fair failed to satisfy § 9–504's preconditions for obtaining such a judgment because Lamp Fair did not "sell, lease or otherwise dispose" of the store. Lamp Fair did not hold a "public sale," at which it could have bid for the collateral. Nor could it have purchased the collateral itself by means of "private sale," for the store is not of the "type customarily sold in a recognized market or ... the subject of widely distributed standard price quotations." And, whatever the meaning of the words "otherwise dispose of," they do not include permanent retention of the collateral for the secured party's own use. *Appeal of Copeland*, 531 F.2d 1195, 1207 (3d Cir.1976). *Cf. National Equipment Rental, Ltd. v. Priority Electronics Corp.*, 435 F.Supp. 236, 240 (E.D.N.Y.1977) (repossession and conversion to own use by plaintiff's agent not "disposition" under § 9–504, so § 9–505 applies); *Black's Law Dictionary* 423 (5th ed.1979) (defining "disposition" as "transferring to the care or possession of another ... parting with, alienation of, or giving up property"). (Consider, as well, the contrasting use of "disposition" in section 9–504 and "retention" in section 9–505. *Copeland*, 531 F.2d at 1207.)

We concede that this last point (that § 9–504 does not foresee a creditor's *both* retaining the collateral (without public or private sale) *and* obtaining a deficiency judgment) is not absolutely clear in the Code. Conceivably, one could argue the contrary by pointing out that the Code elsewhere gives a remedy to a debtor when a secured creditor holds his collateral and will not dispose of it. (To be specific, § 9–507(1) says:

> If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions.)

One might reason that where the creditor keeps the collateral and where the debtor does not use § 9–507(1) to force its disposition, the creditor then may proceed under § 9–504 to collect a deficiency judgment. (In any such proceeding the creditor might have to overcome a special "rebuttable presumption" that the collateral was worth at least as much as the debt. *Savings Bank of New Britain v. Booze*, 34 Conn.Supp. 632, 382 A.2d 226, 228–29 (1977) (creating "presumption" as a penalty for creditor's failure to fulfill § 9–504's notice requirements); *Connecticut Bank and Trust Company, N.A. v. Incendy*, 207 Conn. 15, 540 A.2d 32, 38 (1988) (adopting *Booze*).) This retention-plus-deficiency-judgment-plus-presumption theory does not strike us as a very plausible analysis of § 9–504, however. And, we have found only one court

that has taken this last-mentioned course, allowing a deficiency judgment (while imposing a "rebuttable presumption") where the creditor simply retained the collateral. *S. M. Flickinger Co. v. 18 Genesee Corp.*, 71 A.D.2d 382, 423 N.Y.S.2d 73, 76 (1979) (court divided 3–2). Every other case we have found has denied the creditor the deficiency judgment. *See, e.g., H. V. Funding, Inc. v. Ernest Varkas & Sons, Inc.*, 140 Misc.2d 587, 531 N.Y.S.2d 484, 486 (1988) (agreeing with *Flickinger* dissenters and denying deficiency). The Third Circuit, for example, has said that to permit a deficiency judgment "would contravene the Code's mandate that an effective election to retain the collateral results in a complete discharge of the underlying obligation," *Appeal of Copeland*, 531 F.2d at 1207, a mandate that permits the creditor to obtain a deficiency judgment only with the "collateral valuation" safeguards that a "commercially reasonable" sale under § 9–504 or a judicial sale make possible.

We need not decide which alternative line of reasoning Connecticut would follow, whether Connecticut would hold 1) that § 9–505(2) governs, or 2) that the transaction falls within the scope of, but fails to meet the necessary prerequisites of, § 9–504. Either way the law denies Lamp Fair its deficiency judgment. We can predict with reasonable assurance, *Meredith v. Winter Haven*, 320 U.S. 228, 236–38, 64 S.Ct. 7, 11–13, 88 L.Ed. 9 (1943), that Connecticut would follow one or the other of these paths to this result. Therefore the judgment of the district court must be

*Reversed.*

### STATUTORY APPENDIX

Conn.Gen.Stat. § 42a–9–501

(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.... The rights and remedies referred to in this subsection are cumulative....

(3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection (3) of Section 9–504 and Section 9–505)....

(b) subsection (3) of Section 9–504....

(c) subsection (2) of Section 9–505....

(5) When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral. A judicial sale, pursuant to such execution, is a foreclosure of the security interest by judicial procedure within the meaning of this section, and the secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of this Article.

Conn. Gen. Stat. § 42a–9–504

(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing....

(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency....

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not

signed after default a statement renouncing or modifying his right to notification of sale. . . . The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

Conn. Gen. Stat. § 42a–9–505

(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. . . . If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under Section 9–504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.