**Richard E. BANKER**

v.

**UPPER VALLEY REFRIGERATION CO., INC., Quality Mechanical, Inc., Wilton L. Buskey, Carol Buskey.**

Civ. No. 89–368–S.

United States District Court,
D. New Hampshire.

Jan. 10, 1991.

Albert J. Cirone, Jr., Lebanon, N.H., for plaintiff.

L. Jonathan Ross, Manchester, N.H., for defendants.

### ORDER

STAHL, District Judge.

In this civil action, plaintiff Richard E. Banker seeks a deficiency judgment for alleged nonpayment of a promissory note executed by defendants. Defendants Carol and Wilton Buskey move for summary judgment, claiming that Banker, by exercising control over stock pledged as security for the promissory note, took that stock in satisfaction of any claimed indebtedness, and is thus barred by Article Nine of the Uniform Commercial Code from obtaining a deficiency judgment.

### 1. Facts

The material facts are not in dispute.[1] Fed.R.Civ.P. 56(c). In July of 1986, Upper Valley Refrigeration Co., Inc. ("UVR"), then wholly owned by the Buskeys, purchased from Banker fifty percent of the outstanding shares of Quality Mechanical,

---

**1.** Banker argues that there are several unresolved issues of material fact which render summary judgment inappropriate. The Court speaks to certain of these issues in this Order. The Court has duly considered Banker's remaining arguments, and finds them to be without merit.

Inc. ("QM"). On December 3, 1987, the parties entered into an agreement whereby UVR acquired from Banker the remaining shares of QM. Pursuant to that agreement, the Buskeys, UVR and QM signed a promissory note payable to Banker in the principal amount of $260,000.

Pursuant to a security agreement executed in connection with the sale, the defendants secured the note obligations with all of the outstanding shares of UVR and QM. Section four of the security agreement stated that "[i]n the event of default, ... [Banker] may exercise all of the rights and remedies of a secured party under the Uniform Commercial Code or any other applicable law." Apparently also in the event of default, Banker had "the right to immediate possession of the physical collateral." Section five stated that "all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of the State of New Hampshire."

In June of 1989, Banker commenced suit against defendants in New Hampshire State Superior Court, alleging a default in payment on the promissory note. The case was removed to this Court on July 31.

By letter dated September 27, 1989, Banker's counsel notified the Buskeys, apparently for the second time, that they were in default, and warned that if the default were not cured by October 22, "the entire principal and outstanding interest shall at once become due and payable." Banker's counsel also stated that if the default were not cured within fifteen days, "we will proceed to secure our rights pursuant to the Security Agreement, and in particular, we will exercise all of Mr. Banker's rights as detailed in Section 4 of [the agreement], including the rights ... available under the Uniform Commercial Code or other applicable law."

In October of 1989, pursuant to the security agreement, Banker took possession of the stock certificates of UVR and QM, which represented the outstanding shares of these corporations, and entered his name on them. At the time Banker took possession of the stock, it was being held in escrow by his attorney.

On January 15, 1990, after unsuccessful attempts at settlement and additional warnings, Banker commenced exercising his rights as sole shareholder of UVR and QM by removing the Buskeys as directors of these corporations and appointing himself director, president, and treasurer. Banker eventually assumed day-to-day control of UVR, and on January 26, 1990, initiated bankruptcy proceedings. On that same day, his counsel informed counsel for the Buskeys by letter that, notwithstanding these actions, Banker still intended "to recover all amounts due him from" the Buskeys. On January 29, Banker obtained an order for Chapter 11 relief for UVR from the United States Bankruptcy Court for the District of New Hampshire. In March of 1990, the bankruptcy case was converted from a Chapter 11 reorganization proceeding to a Chapter 7 liquidation.[2]

### 2. Discussion

As a preliminary matter, the Court addresses Banker's request that it accept his overdue objection to the Buskeys' motion for summary judgment. Banker also moves for a further extension of time to answer this motion, and for an extension of time for discovery.

The Court grants Banker's motion for acceptance of his late answer, but denies his motion to extend time. The Court has already granted Banker one extension with respect to his answer to the summary judgment motion. Moreover, the material facts necessary to decide this motion are not in dispute, and Banker has failed to persuade the Court that an extension of discovery would reveal any additional material facts.

---

**2.** After UVR and QM filed a petition for relief in the Bankruptcy Court, this Court stayed further proceedings with respect to Banker's claims against these corporations, until such time as the stay is lifted by the Bankruptcy Court. *Or-*

*der,* U.S.Dist.Ct. Civ. No. 89–368–L (Feb. 8, 1990); *Order,* U.S.Dist.Ct. Civ. No. 89–368–L (April 27, 1990). The action proceeds with respect to Banker's claims against the Buskeys.

The sole issue before the Court on the Buskeys' motion for summary judgment is whether Article Nine of the Uniform Commercial Code [3] permits Banker to take possession of the collateral at issue in the manner described above, and continue to seek a deficiency judgment. Banker and the Buskeys concede that Article Nine is the law to be applied in deciding this motion.

Although the Supreme Court of New Hampshire has not had occasion to address this particular issue, the First Circuit, applying Connecticut law, considered a similar question in *Lamp Fair v. Perez–Ortiz*, 888 F.2d 173 (1st Cir.1989). The New Hampshire U.C.C. provisions applicable to the instant case are identical in all material respects to those construed in *Lamp Fair*, and this Court is unaware of any reason why New Hampshire's reading of these provisions would differ from Connecticut's. Therefore, the Court applies *Lamp Fair* in addressing the Buskeys' motion for summary judgment.

The *Lamp Fair* facts are analogous to those of the instant action. On January 1, 1985, Perez–Ortiz contracted with Lamp Fair to purchase from it a lighting fixture store. Perez–Ortiz paid a portion of the purchase price at the time of sale, and signed promissory notes for the remainder. Lamp Fair took a security interest in the store as collateral for the notes. On December 26, Perez–Ortiz returned the store to Lamp Fair, having failed to pay the amount owed pursuant to the notes. Lamp Fair immediately began to operate the store, and, in January of 1986, demanded payment for the difference between the value of the store as calculated by it, and the money Perez–Ortiz still owed it under the contract. When Perez–Ortiz refused to pay, Lamp Fair brought suit. *Id.* at 174–75.

The court in *Lamp Fair* applied Article Nine, which sets forth the remedies available to a secured party. Under Article Nine, a secured creditor has three options

in the event of default by a debtor. He may (1) employ "strict foreclosure," that is, "retain the collateral in satisfaction of the obligation" (9–505), (2) "reduce his claim to judgment ... by any available judicial procedure" (9–501), or (3) "sell, lease or otherwise dispose of any or all of the collateral ... by public or private proceedings" (9–504). *See id.* at 175–76; RSA 382–A:9–501(1), :9–505(2), :9–504(1) & (3).

The court concluded that *Lamp Fair* had taken possession of the collateral in full satisfaction of the debt, and thus was barred from maintaining an action for a deficiency judgment. This result was reached through two alternative readings of the above provisions.

Under the first reading, *Lamp Fair* had "foreclosed" on the collateral pursuant to option one (9–505), and, in accordance with that provision, had forfeited any claim for deficiency. *Id.* at 176. Alternatively, if 9–505 were inapplicable, *Lamp Fair* could maintain its claim, but only if it could show that it had taken possession of the store for the purpose of effectuating either of its two remaining options (9–501 or 9–504). The court found that *Lamp Fair* did not take possession for such a purpose, and concluded that its claim for deficiency was barred by either reading of Article Nine. *See id.* at 175–76, 177. Since both lines of reasoning led to the same result, the *Lamp Fair* court expressly refrained from deciding which line of reasoning Connecticut would apply.

The Buskeys assert that *Lamp Fair* requires this Court to grant them summary judgment in the instant action. In addressing this claim, the Court considers each of Banker's Article Nine options to determine which, if any, is applicable.

### 9–505: Strict Foreclosure

■ If a creditor successfully forecloses by retaining the security, the debt is "completely satisfied." If the debt is so satisfied, the creditor must completely abandon any claim for deficiency." *Id.* at 176.

---

**3.** Article Nine has been adopted at § 382–A:9–101 et seq. of the New Hampshire Revised Stat-     utes Annotated.

U.C.C. § 9–505 requires a creditor who chooses this option to send the debtor written notice of his intention to do so. *See* RSA 382–A:9–505(2). However, there is disagreement among jurisdictions as to whether a creditor who does not fulfill the notification requirement nonetheless can be deemed to have employed strict foreclosure. *Lamp Fair* at 176–77.

A majority of jurisdictions do not require notice, and will in certain circumstances apply strict foreclosure by operation of law. These jurisdictions reason "that the Code intends 'to put the creditor to an election either to sell the repossessed collateral pursuant to Section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to Section 9.505.'" *Id.* at 176 (quoting *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771–72 (Tex.1982)). A minority of courts refuse "to 'force' [the strict foreclosure option] upon an unwilling secured creditor." *Id.* at 177. The *Lamp Fair* court did not take a position on this issue. *Id.* at 176–78.

In the instant case, Banker did not notify the Buskeys that he intended to retain the security in satisfaction of their debt. Nor did he opt to sell the repossessed collateral. Thus, the majority of courts which have considered the question would hold that Banker retained the security in satisfaction of the debt, and that he cannot now claim a deficiency. A minority would hold that, since Banker did not fulfill the notification requirement of 9–505, he did not fall within its scope. *See id.* at 177.

Banker argues that the issue of whether he retained the stock in satisfaction of the debt is one of fact, and therefore cannot be resolved on summary judgment. The Court disagrees. Although Banker correctly states that other jurisdictions have treated this issue as one of fact, *Lamp Fair* appears to treat it as an issue of law. *See id.* at 175–76.

Even if the Court were to treat the question as one of fact, Banker has not met his burden in response to the Buskeys' motion for summary judgment of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see Olivera v. Nestle Puerto Rico, Inc.,* 922 F.2d 43, 44–45 (1st Cir.1990). Banker's mere assertion that the Buskeys were informed by letter dated January 26, 1990 of his intention not to retain the stock in satisfaction of the debt [4] is insufficient to meet this burden. Under the majority view, defendant's stated intention apparently is irrelevant. Under the minority view, Banker clearly did not opt for strict foreclosure.

Banker also urges the Court to follow *Cohen v. Rains,* 769 S.W.2d 380 (Tex.App. 1989), which applied the majority view, and held that a creditor who retained stock certificates as security after a default by his debtors did not necessarily do so in satisfaction of the debt. *Cohen,* a Texas decision, is not binding on this Court. In any event, it is clearly distinguishable from the instant case.

The creditor in *Cohen,* unlike Banker, never endorsed the stock certificates, nor did he transfer ownership of them to himself. *See id.* at 382. Instead, he brought an action for the deficiency, requesting the court to set a specific date for public sale of the stock, "with the proceeds, if any, being credited against the amount of the judgment." The creditor proceeded simply to vote the stock, to remove the debtors as directors of the corporation, and to elect himself president. *See id.* at 383. The *Cohen* court concluded that the creditor's decision to vote the stock was not dispositive of an intention to retain it in satisfaction of the debt.

In the instant case, Banker never evidenced an intent to sell the stock. Rather, he took possession of and voted the stock in order to assume control of UVR. Thereafter, he commenced the day-to-day management of UVR, and ultimately determined to file for bankruptcy. Thus, this

---

**4.** The precise wording of the January 26 letter was that "Banker will continue to pursue his rights through use of the United States District Court and intends to recover all amounts due him from ... Mr. and Mrs. Buskey."

Court's conclusion that, under the majority view, Banker took the stock in satisfaction of the outstanding debt is consistent with the conclusion of the *Cohen* court.

Banker also cites *Wisconics Engineering, Inc. v. Fisher*, 466 N.E.2d 745 (Ind. App. 2 Dist.1984), which held that a creditor can retain collateral for a reasonable period of time without attempting to dispose of it, and still maintain an action for a deficiency. The creditor in *Wisconics* retained stock that had been designated as collateral, without expressly electing to retain it under section 9–505 of the U.C.C. He voted the stock, restored himself as president of the company that had issued the stock, placed the company in a bankruptcy reorganization proceeding, and retained the stock for eighteen months without attempting to dispose of it. *See id.* at 762. The court held that whether he had implicitly retained the stock in satisfaction of the debt under 9–505 is a question for the finder of fact. *Id.* at 766.

*Lamp Fair*'s construction of Article Nine's remedy provisions appears to be at odds with that of *Wisconics. Lamp Fair* interprets these provisions as requiring a creditor who repossesses collateral to elect "either to sell [it] pursuant to Section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to 9.505." *Lamp Fair, supra,* at 176. Assuming, *arguendo,* that *Lamp Fair* treats the issue as one of fact, it presumably requires a creditor who retains collateral, but claims not to have opted for his 9–505 remedy, to offer at least some evidence of an election to dispose of the collateral pursuant to 9–501 or 9–504. As Banker has supplied no evidence of an intention to employ either of the latter options, the Court finds that there is no genuine issue for trial. The issue of whether Banker opted for either his 9–501 or 9–504 remedy is explored more fully below.

### 9–501: Judgment

██ The second option, set forth in U.C.C. § 9–501(1), permits the secured party to "sue on the note itself."

At a judicial sale of the debtor's property . . . the secured party may buy the collateral himself, and he can look to the debtor's other property to satisfy any remaining debt . . . A secured party choosing this option may take possession of the collateral prior to obtaining judgment, but only to preserve it as security for the debt . . . He does not own the collateral; he may use it only 'for the purpose of preserving the collateral or its value' for future disposition.

*Lamp Fair* at 175.

The record indicates that Banker did not take possession of the collateral for the purposes permitted by this section. At the time he seized it, the stock was being held in escrow by his own attorney. Therefore, he did not take possession of it in order to prevent its physical destruction.

More importantly, Banker did not take any action evidencing an intention to sell the stock, to determine its value, or to preserve its value for future sale. Although he alleges that he placed UVR in Chapter 11 bankruptcy proceedings "to protect [UVR's] assets," there is no evidence that he ever intended to sell the stock. Furthermore, Banker's conversion of the bankruptcy proceeding to Chapter 7 is inconsistent with any claim that he intended to preserve the value of the stock for future disposition.

### 9–504: Disposition

Section 9–504 sets forth the secured creditor's remaining option. It says that he 'may sell, lease or otherwise dispose of any or all of the collateral . . . by public or private proceedings.' After doing so, he must 'account to the debtor for any surplus,' and 'the debtor is liable for any deficiency.' Every aspect of the disposition must be 'commercially reasonable.' In addition, the secured creditor must give the debtor notice of when the sale or other disposition will take place. The secured creditor can buy the collateral himself at any 'public sale,' but he cannot buy it at a 'private sale' unless the collateral is 'of a type customarily sold in a recognized market or . . . the subject of widely distributed standard price quotations.'

*Id.* at 176 (quoting U.C.C. § 9–504(1)–(3)); *see* RSA 382–A:9–504(1)–(3).

Banker did not take possession of the stock for the purpose of employing his 9–504 option. He did not "sell, lease or otherwise dispose of" the stock through a public sale, and could not have purchased it at a private sale because it was not of the "type customarily sold in a recognized market or ... the subject of widely distributed standard price quotations." *Lamp Fair, supra,* at 176, 177.

Although the phrase "otherwise dispose of" as it appears in 9–504 has not been defined precisely, *id.,* it does not refer to the Chapter 7 liquidation initiated by Banker in this case. U.C.C. § 9–504(4) states that "[w]hen collateral is disposed by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein ..." RSA 382–A:9–504(4). This provision implies that a "disposition" involves a sale to "purchasers for value." Although a Chapter 7 liquidation may involve the sale of a corporation's *assets,* it does not involve the sale or "disposition" in any sense of its *stock,* the security at issue here. *C.f. Nadler v. Baybank Merrimack Valley, N.A.,* 733 F.2d 182, 183 (1st Cir.1984) (liquidation sale of assets of corporation after voluntary bankruptcy proceeding is a "disposition" under U.C.C. 9–504, where assets were collateral for transaction at issue); *Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745, 762 (Ind.App. 2 Dist.1984) (implying in dicta that bankruptcy reorganization proceeding is not disposition of stock collateral). Therefore, in converting the Chapter 11 proceeding to a Chapter 7 liquidation, Banker was not "disposing" of the stock in accordance with 9–504.

### 3. Conclusion

Having applied the *Lamp Fair* analysis to the instant case, the Court is left with two alternative theories upon which to base its decision. Both theories lead to the same result. If the Court were to follow the majority strict foreclosure view, it would hold that Banker retained the security in satisfaction of the debt, thereby pre-cluding him from seeking a deficiency judgment. *See Lamp Fair* at 176. Alternatively, if the Court were to apply the minority strict foreclosure view, it would hold that Banker's actions did not come within the scope of strict foreclosure. However, because Banker took possession of the stock for purposes other than those allowed by his two remaining options, the Court would still dismiss his current action for a deficiency judgment. *See id.* at 178. As the outcome under either theory is the same, the Court need not decide which line of reasoning New Hampshire would follow. *See id.* at 178.

For the reasons stated above, defendants Carol and Wilton Buskey's motion for summary judgment (document no. 69) is granted. Banker's motion to permit late filing of his objection (document no. 75) is granted, but his motion to extend time (document no. 74) is denied.

Defendants Carol and Wilton Buskey's motions to strike Banker's notice of *lis pendens* (documents nos. 44 & 45) are granted.

Because the Court disposes of this action on summary judgment, it need not respond to the various other motions pending (document nos. 29, 25, 22, 20).

SO ORDERED.