Belknap
No. 94-091

R. DARRELL JENKINS

v.

G2S CONSTRUCTORS, INC. AND PHILIP E. SWETT

September 22, 1995

*Upton, Sanders & Smith,* of Concord (*Gilbert Upton* on the brief, and *Russell F. Hilliard* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*George R. Moore* and *Alexander J. Walker, Jr.* on the brief, and *Mr. Moore* orally), for the defendants.

BROCK, C.J. The plaintiff, R. Darrell Jenkins, appeals the Superior Court's (*O'Neil*, J.) grant of the defendants' motion to dismiss his claims for lack of standing to sue because he is not a stockholder of defendant G2S Constructors, Inc. (G2S). The plaintiff also challenges the underlying conclusion that he is no longer a stockholder of G2S. We reverse and remand.

The parties agree to the following facts. In 1983, defendant Philip E. Swett, a majority shareholder of G2S, agreed to sell to the plaintiff ten of his fifty shares of G2S stock. The plaintiff was an employee of G2S at the time. They agreed to a purchase price of $70,000. To finance the transaction, the plaintiff paid Swett twenty percent of the price, $14,000, in cash, and obtained a loan from G2S for the remaining $56,000. Pursuant to the agreement between the plaintiff and G2S, G2S would pay the $56,000 directly to Swett, and the plaintiff would, on an installment basis, repay the loan to G2S.

In 1984, the plaintiff executed a "collateral note" to G2S, under which he would repay the corporation by making annual payments over a period of ten years. The note provided that the ten shares of G2S stock would be deposited with G2S as collateral, and granted G2S "in the event of . . . non-payment . . . within thirty days of a demand therefore, authority to transfer ownership of [the] stock certificate to G2S . . . or [its] assigns." The parties do not dispute that this was a demand note. The agreement also provided for a method of determining the value of the shares in the event of default. A stock certificate representing the ten shares was delivered to the plaintiff in 1985. Shortly thereafter, he placed the certificate in the corporate safe, where it remains today.

In accordance with the agreement, the plaintiff made timely payments of principal and interest in 1985, 1986, and 1987. After G2S experienced cash flow difficulties, Swett, in his capacity as president of G2S, made demand on the plaintiff for all outstanding principal and interest on the note in December 1987. In January 1988, the plaintiff resigned his employment as officer and director of G2S. He did not pay the outstanding balance within the thirty-day period and, in fact, has made no further payments on the note. The parties dispute the value of the stock as of the date of his default on the loan: the defendants present a value of zero, while the plaintiff suggests a substantial value.

In 1990, the plaintiff filed a petition, as a shareholder, to liquidate G2S pursuant to RSA 293-A:98, I(a) (1987) (now codified at RSA

293-A:14.30(b) (Supp. 1994)). In his petition, he alleged that Swett was acting illegally and oppressively in his management of G2S, specifically in his assertion that the ten shares of stock have no value. The defendants answered the petition by asserting that the plaintiff was not a shareholder, and moved for summary judgment. The Superior Court (*O'Neil*, J.) denied the motion for summary judgment. The defendants also filed a cross-petition against the plaintiff, under RSA 293-A:82, VIII (1987) (now codified at RSA 293-A:13.30 (Supp. 1994)), seeking an evaluation of the fair value of the shares that the plaintiff claimed to own.

The Superior Court (*Fauver*, J.) approved a stipulation between the parties in 1992, pursuant to which the case would be bifurcated for trial,

> the initial issue to be determined being the status of the plaintiff as a shareholder of G2S . . ., and if he is no longer such a shareholder, the date on which he cease[d] to be. Depending upon the resolution of this initial issue, the subsequent issue will be the nature and extent of relief available to the plaintiff.

The stipulation also expressed the parties' agreement that the case would be referred to a master, "with the understanding that the decisions of the Master are subject to appeal to the New Hampshire Supreme Court in the same manner decisions of the Superior Court are . . . reviewable." Subsequently, the parties and the master agreed that the issues properly before him were (1) whether or not the plaintiff was a shareholder of G2S, and (2) if not, when he ceased being a shareholder.

After a hearing, the Master (*James L. Burke*, Esq.) concluded that the plaintiff ceased being a shareholder of G2S in January 1988, thirty days after Swett made demand for the outstanding balance of the note. Preliminary to this conclusion, the master found that G2S perfected a security interest in the stock when it took possession of the certificate; namely, when the plaintiff placed the certificate in the G2S safe. Because of this finding, the master concluded that title to the stock automatically transferred to G2S in January 1988.

The Superior Court (*Fauver*, J.) approved the master's report. The plaintiff subsequently moved, without objection, to amend his petition. In his motion, the plaintiff specifically noted his disagreement with the master's conclusions, stated that he "reserve[d] his right to appeal once a final order is issued in this matter," and stated that his "requested amendment [was] necessary to move the case forward." The following comprises the entire substance of the plaintiff's amendment:

3. The plaintiff accordingly seeks, without prejudice, a determination as to the value of ten (10) shares of stock of the corporate defendant as of January 21, 1988, and for payment therefor in accordance with the terms of the "collateral note" dated December 6, 1984.
4. The plaintiff seeks judgment against the corporate defendant for the amount he is due for such stock.

The Superior Court (*Fauver*, J.) granted the plaintiff's motion to amend.

Five months later, and after the defendants had changed counsel, the defendants moved to dismiss the plaintiff's petition for lack of standing. Specifically, the defendants argued that an action under RSA 293-A:98 must be commenced by a shareholder, and, because the trial court had concluded that the plaintiff ceased being a shareholder of G2S more than two years prior to his bringing his petition, he had no standing to sue. The plaintiff objected, claiming that "there remains pending the question of the value of [the plaintiff's] stock."

The Superior Court (*O'Neil*, J.) granted the defendants' motion to dismiss, characterizing the bifurcated proceedings thus: "It violates the very notion of standing to suggest, as Plaintiff does, that a party can bring suit, bifurcate the merits of the case from the issue of standing, fail to establish standing, and then demand a decision on the merits." In its ruling, the trial court treated its adoption of the master's recommended finding that the plaintiff ceased to be a shareholder in 1988, prior to commencing the action, as "an order that concluded the proceedings before it." The court denied the plaintiff's timely motion for reconsideration, stating that "[s]ince Plaintiff had no standing to sue, *none* of the issues he raises can be heard."

The plaintiff raises the following issues on appeal: (1) whether the master's decision was final and unappealable after the elapse of thirty days from its approval; (2) whether the defendants were estopped by their conduct from challenging the timeliness of the plaintiff's appeal; (3) whether the master erred in his decision that G2S had acquired title to the stock after the plaintiff's default; and (4) whether the trial court erred when it dismissed the plaintiff's suit for lack of standing.

## I. Finality of Master's Decision in Bifurcated Proceeding

When the parties stipulated to bifurcation of the proceedings, they agreed that the first issue consisted of two parts: first, whether the plaintiff was a shareholder of G2S when he commenced the

action; and second, if he was no longer a shareholder, when he ceased to be one. This was not characterized at the time as an issue of standing. Depending upon the resolution of this initial issue, the parties agreed that the second part of the bifurcated proceeding would be a determination of "the nature and extent of relief available to the plaintiff."

We must determine whether the trial court's approval of the master's conclusions constituted a final decision on the merits. If it was, then the plaintiff's failure to challenge it within thirty days prevents him from raising it now. *See* SUP. CT. R. 7(1). Our rules define a decision on the merits to include an "order, verdict, opinion, decree, or sentence following a hearing on the merits or trial on the merits and the decision on motions made after such order, verdict, opinion, decree or sentence." SUP. CT. R. 3. A *final* decision on the merits concludes the proceedings before the court. *See Germain v. Germain*, 137 N.H. 82, 84, 623 A.2d 760, 761 (1993); *see generally* J. FRIEDENTHAL ET AL., CIVIL PROCEDURE § 13.1 (1985) (analyzing the final judgment rule and its exceptions).

In *Germain*, we held that the trial court resolution of the first portion of bifurcated divorce proceedings constituted a "decision on the merits" that concluded the proceedings before the court on the specific issues decided, and that, accordingly, "failure to file a timely appeal from that order in accordance with Supreme Court Rule 7 [would] result in the entry of final judgment pursuant to Superior Court Rule 74." *Germain*, 137 N.H. at 84, 623 A.2d at 761.

The instant case is distinguishable from *Germain*. In *Germain*, the first order in the bifurcated divorce proceeding "awarded the parties a decree of divorce and divided their property, but left the determination of custody and permanent child support to a further hearing." *Id.* at 83, 623 A.2d at 761. The divorce decree and property division order was completely severable from the child custody issue. In the instant case, the determination of whether G2S owed money to the plaintiff, regardless of whether or not he was a shareholder, is not so completely severable. Resolution of the plaintiff's status as shareholder, or creditor, was a required preliminary determination in this case: he would be required to take a different avenue to relief depending on this resolution. The plaintiff might have amended his complaint, as he did in this case, or he might have chosen to litigate the value of the stock by defending G2S' counterclaim. We hold that although the plaintiff could have sought interlocutory review of the trial court's approval of the master's recommendation, *see* SUP. CT. R. 8, he was not required to appeal then in order to prevent entry of final judgment.

Because we conclude that the plaintiff's current challenge to the determination that he is no longer a shareholder of G2S is timely, we need not address his contention that the defendants should be estopped from challenging the timeliness of the appeal.

## II. Perfection of Security Interest

We next consider whether the master erred in his decision that G2S had acquired title to the stock after the plaintiff's default, and that therefore the plaintiff ceased to be a shareholder of G2S in January 1988. Implicit in this determination was the conclusion that G2S perfected a security interest in the stock upon taking possession of it.

We are bound by the factual findings of the master unless insufficient evidence supports them. *Bock (Lundstrom) v. Lundstrom*, 133 N.H. 161, 164, 573 A.2d 882, 884–85 (1990). We will uphold the master's legal rulings unless they are erroneous as a matter of law. *Britton v. Town of Chester*, 134 N.H. 434, 438, 595 A.2d 492, 494 (1991).

On appeal, the plaintiff does not challenge the effectiveness of Swett's demand that he pay all outstanding obligations on the collateral note in December 1987. He contends that because G2S did not take possession of the stock when the parties executed the collateral note, G2S failed to perfect a security interest in it, and that title did not automatically transfer to G2S when he defaulted. In the plaintiff's view, he continues to own the stock, and G2S' loan to him is now uncollateralized; G2S is therefore limited to the forms of relief outlined in the loan agreement.

Article 9 of the Uniform Commercial Code (UCC) controls the creation and perfection of security interests in securities, except with respect to issues expressly covered in article 8. *See* RSA 382-A:9-105(1)(i) (Supp. 1985) (amended 1987) (defining "instrument" for article 9 purposes as including article 8 "securities"); Coogan, *Security Interests in Investment Securities Under Revised Article 8 of the Uniform Commercial Code*, 92 HARV. L. REV. 1013, 1052–53 (1979); *cf.* RSA 382-A:8-321(3) (1994) (interaction between articles 8 and 9 now explicit).

▉ "A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." RSA 382-A:9-303(1) (1994). When the note was signed and when G2S "took possession" of the stock, RSA 382-A:9-304(1) (Supp. 1985) (amended 1987) provided that a security interest in an "instrument" could be perfected only by possession. A transfer of legal title to the stock was not required to perfect the interest. RSA

382-A:9-202 (1994) (provisions of article 9 apply regardless of whether title is in debtor or secured party); *see* 68A AM. JUR. 2D *Secured Transactions* § 444, at 360 (1993). The interest became perfected "from the time possession [was] taken without relation back and continue[d] only so long as possession [was] retained." RSA 382-A:9-305 (Supp. 1985) (amended 1987). The collateral note reflects that the parties anticipated perfection in this way; the note provides that the plaintiff would "deposit[]" the stock "with [G2S] as general collateral security for the payment of this and any other liability." Accordingly, G2S' security interest in the collateral stock became perfected when the plaintiff transferred the stock to the corporate safe.

### III. Shareholder Status

We now turn to the question of current ownership of the G2S stock. Article 9 does not define "default," but allows the parties to define the term in their security agreement. *See* RSA 382-A:9-501(1) (1994). The parties defined default in the collateral note as occurring "in the event of the non-payment of [outstanding] liability within thirty days of a demand therefore." In the event of default, the agreement granted G2S the "authority to transfer ownership" of the stock to itself or its assigns.

The parties do not dispute that the plaintiff was in default, but do urge different consequences. The plaintiff contends that the collateral note merely granted the "authority" to transfer ownership of the stock on the corporate books from the plaintiff's name to G2S' name. Conversely, the defendant argues that title shifted with or without a transfer on the corporate books, or any other affirmative step on its part.

In this regard, the master concluded that after the security interest was perfected,

> [a]ll that remained for title to pass from . . . [the plaintiff] to G2S, *under the terms of the 1984 note*, was the occurrence of the event described in that note — "non-payment of [the amount due] within thirty days of a demand therefore". This event occurred on 21 January 1988. On this date the essential contingencies of the contract, as represented by the note, had occurred, and only the valuation of the stock remained. As between the two parties to the note, [the plaintiff] and G2S, the transfer was complete at that moment and title passed to G2S.

(Emphasis added.) In reaching this result, the master relied on the provision of article 8 of the UCC providing for the right of a

purchaser of securities to compel indorsement. *See* RSA 382-A:8-307 (1961) (amended 1987). This provision provides that as between the purchaser and seller of securities, transfer is complete upon delivery, even if the securities are not indorsed. *Id.* Although one obtaining a security interest pursuant to article 9 is a "purchaser" for purposes of articles 8 and 9, *see* RSA 382-A:1-201(32), (33) (1994), this provision is not dispositive between the parties in this case. The provision appears in a part of article 8 relating to bona fide purchasers of securities. *See* RSA 382-A:8-301 (1961) (amended 1987). Each of the provisions following RSA 382-A:8-301 clarify the rights described in it. *See, e.g.,* RSA 382-A:8-302 (1961) (amended 1987) (defining bona fide purchaser); RSA 382-A:8-307 (right to compel indorsement, so as to become a bona fide purchaser). RSA 382-A:8-301(1) provides that a "purchaser" acquires whatever rights the transferor had to give. *See In re Kontaratos*, 10 B.R. 956, 962 (Bankr. D. Me. 1981). This rule presumes a sale; this section does not grant one taking a security interest full title to the collateral. *See* RSA 382-A:8-301(2) (1994) (reflecting 1987 amendment).

RSA 382-A:8-307 takes on a different meaning when read in this light. "[T]he transfer is complete upon delivery," *id.*, means that no indorsement is required, as between the secured creditor and the debtor, for the security interest to be effective under article 8. Nothing in this section relieves the parties from their obligation to comply with default provisions of article 9.

The rights of the parties upon the plaintiff's default, therefore, depend upon their compliance with article 9. When in possession of the collateral, the secured creditor has several options upon default. Each requires the secured creditor to take some affirmative action before title shifts.

> In addition to permitting a secured party, in the event of default, to reduce his claim to judgment and to enforce the security interest by any available judicial procedure, [RSA 382-A:9-501(1)], Article 9 of the Code establishes two alternative methods of enforcing a security interest upon default. First, a secured party may "sell, lease or otherwise dispose of" collateral, in which case he must account to the debtor for any surplus or hold the debtor liable for any deficiency. [RSA 382-A:9-504(1), (2) (1994)]. Second, a secured party may make a written proposal to retain the collateral in full satisfaction of the obligation. [RSA 382-A:9-505(2) (1994)]. If the debtor objects to this proposal in writing within thirty days, however, the secured party must proceed in accordance with the first alternative. [*Id.*]

*Appeal of Copeland,* 531 F.2d 1195, 1206 (3d Cir. 1976). These provisions protect the debtor's rights and may not be waived or modified in the security agreement. RSA 382-A:9-501(3) (1994).

■ No provision is made in article 9 for an automatic transfer of title upon default, and the common law rules of pledges continue to apply. *See* RSA 382-A:1-103 (1994). "Indeed, title remains in the pledgor after default . . . . The pledgee at that point has only the right to proceed by the terms of the contract and in concert with such rights and remedies as are provided by the Uniform Commercial Code." *In re Copeland,* 391 F. Supp. 134, 143 (D. Del. 1975), *aff'd in part and vacated in part on other grounds,* 531 F.2d 1195 (3d Cir. 1976). "[T]here is no automatic transfer of title merely by reason of the debtor's default." *Id.*

G2S has not expressly "propose[d] to retain the collateral in satisfaction of [the plaintiff's] obligation." RSA 382-A:9-505(2). Some jurisdictions have held that a secured creditor may make, and be limited by, such a proposal implicitly. *See Cohen v. Rains,* 769 S.W.2d 380, 386–87 (Tex. Ct. App. 1989) (describing several approaches to implicit retention of collateral in satisfaction of a secured obligation). The two circumstances under which courts make a finding of implicit retention are where the secured party retains the collateral for "an unreasonable period of time" without written notice of intent, *id.* at 387, or when "the secured party, by his actions, manifest[s] an intent to retain the collateral in satisfaction of the obligation." *Id.* Even if we were inclined to adopt one of these methods for avoiding strict compliance with the written notice provisions of RSA 382-A:9-505, we need not: G2S' actions in this case would meet neither of the standards. The parties negotiated consistently during the period after the plaintiff's default, debating the fair value of the stock as of the date of default; no finding of an unreasonable period of retention would be warranted. G2S continued to refer to the stock as belonging to the plaintiff during these negotiations and did not attempt to exercise any rights attendant to ownership of the stock. *See id.* at 388.

Although G2S did not comply with RSA 382-A:9-505's notice requirements for retention of collateral in satisfaction of the debt, it retained the right to "sell, lease or otherwise dispose of" the collateral. RSA 382-A:9-504(1). If it followed this path, it would be required to "account to the debtor for any surplus, and, unless otherwise agreed, [the plaintiff would be] liable for any deficiency." RSA 382-A:9-504(2); *see Bezanson v. Fleet Bank-NH,* 29 F.3d 16, 20 (1st Cir. 1994) (applying New Hampshire law) ("One who possesses collateral for a loan in default cannot walk away with the collateral

if it is worth more than the debt."). G2S did not sell or lease the stock; it remains in the corporate safe. Although courts have struggled with the "otherwise dispose of" language of this provision, *see Cohen*, 769 S.W.2d at 391, allowing the stock to remain in the safe and continuing to negotiate with the plaintiff regarding its value does not constitute a "disposition" under any construction. *See id.* at 391–93 (disposition includes destruction, sale, lease, and transfer of title to collateral to a third party but does not include "exercise of ownership rights").

■ The master erred as a matter of law when he concluded that title to the stock transferred to G2S at the moment the plaintiff defaulted. G2S was required to take one of several available steps to take title, pursuant to RSA 382-A:9-504 and RSA 382-A:9-505; it did not and has not. Accordingly, although G2S retains the right to choose either of these options, the plaintiff remains a shareholder.

■ Because the plaintiff remains a shareholder in G2S, he has standing to pursue this action pursuant to RSA chapter 293-A:98. The trial court's granting of G2S' motion to dismiss for lack of standing is therefore reversed.

*Reversed and remanded.*

All concurred.