In re: Daniel S. Campano                CV-02-509-M    05/29/03
                      UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


In re:
Daniel S. Campano,
      Debtor


_____


Steven M. Notinger, Chapter 7
Trustee for the Estate of
Daniel S. Campano,
      Appellant

      v.                                Civil No. 02-509-M
                                        Opinion No. 2003 DNH 094
Auto Shine Car Wash Systems, Inc.,
      Appellee


                          **O R D E R**


      Daniel S. Campano is a Chapter 7 debtor.  Trustee Steven M.

Notinger appeals a September 13, 2002, order of the bankruptcy

court (Deasy, J.) overruling his objection to Auto Shine Car Wash

Systems, Inc.'s proof of claim.  For the reasons given below, the

order of the bankruptcy court is affirmed.


                        **Standard of Review**

      A bankruptcy court's findings of fact are not set aside

unless clearly erroneous.  Palmacci v. Umpierrez, 121 F.3d 781,

785 (1st Cir. 1997) (citing Fed. R. Bankr. P. 8013; Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir. 1992); Fed. R. Civ. P. 52(c), advisory committee's note to 1991 Amendment).  However, a "bankruptcy court's legal conclusions, drawn from the facts so found, are reviewed de novo."  Palmacci, 121 F.3d at 785 (citing Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997)).

> Absent either a mistake of law or an abuse of discretion, the bankruptcy court ruling must stand. See Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998).  A bankruptcy court "may abuse its discretion by ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if it [considered] only the proper mix of factors, by making a serious mistake in judgment."  Id.

Picciotto v. Salem Suede, Inc. (In re Salem Suede, Inc.), 268 F.3d 42, 44 (1st Cir. 2001).  "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

## Background

The facts of this case, in broad outline, are as follows. Campano is a former employee of Auto Shine Car Wash Systems, Inc.

2

("Auto Shine"), a corporation owned and operated by Frank
DiTommaso.  Auto Shine sold and serviced car wash systems.  On
March 10, 1999, Campano purchased Auto Shine's sales and service
division, in a seller-financed sale, for $940,000.  Campano
executed two promissory notes in favor of Auto Shine, one for
$890,000, the other for $34,000.  Those notes were secured by the
business assets Campano purchased, a second mortgage on Campano's
home, and a limited guaranty from Campano's spouse.  With the
business assets he purchased from Auto Shine, Campano started his
own business, Auto Shine Sales and Service, Inc. ("Sales and
Service").

In February 2001, Sales and Service defaulted on its
obligations to Auto Shine.  On March 28, 2001, in the wake of a
confrontation over unpaid rent between Campano and Sales and
Service's landlord, Campano vacated the business premises.  When
he left, Campano took a laptop computer and some customer and
vendor lists.  Employee Sherry Curtis took several boxes
containing paper copies of accounts payable and accounts
receivable, and held those records until July 29, 2002, the date
of the Bankruptcy Court's hearing on Auto Shine's proof of claim.

3

Employees Bruce White and Louie Mattia loaded their Sales and Service trucks with tools, equipment, and inventory.[1] They stored those items at their homes and used them for servicing Sales and Service customers during the several-week interval between the demise of Sales and Service and the formation of DiTommaso's new business, Car Wash Systems & Equipment, LLC ("Car Wash"). Car Wash, in turn, hired White and Mattia at some point in April, 2001. When they came to work for Car Wash, White and Mattia brought with them Sales and Service's tools and any uninstalled inventory they had in their possession. DiTommaso, who had been present during the confrontation between Campano and the landlord, took Sales and Service's computers and telephone system. The remainder of Sales and Service's business assets, principally car wash system parts and office furniture, were left behind.

It is undisputed that Auto Shine never gave Campano notice that it intended to retain Sales and Service's business assets in full satisfaction of Campano's debt to Auto Shine. Rather, Auto

---

[1] Some of the inventory that White and Mattia took had already been paid for by customers.

4

Shine notified Campano, by letter, of its intention to collect collateral and then sell it.  No such sale was ever conducted.

On October 9, 2001, Campano filed a petition for protection under Chapter 7 of the Bankruptcy Code.  Auto Shine filed a timely proof of claim in the amount of $873,534.55, representing the balance owing on the larger of the two promissory notes that Campano gave Auto Shine.[2]  The Trustee objected to Auto Shine's Proof of Claim, arguing that: (1) Auto Shine fraudulently induced Campano to purchase its sales and service division; and (2) Auto Shine was precluded from asserting a claim against the bankruptcy estate because it had retained the collateral securing its note – Sales and Service's business assets – in complete satisfaction of Campano's debt, under the doctrine of strict foreclosure.  In a Memorandum Opinion dated December 13, 2002, the Bankruptcy Court overruled the Trustee's objection.  This appeal followed.

---

[2] At issue is Auto Shine's right to approximately $94,000 in proceeds from the sale of Campano's home.

## Discussion

The Trustee does not appeal the Bankruptcy Court's decision with respect to fraudulent inducement. Rather, he asserts four arguments challenging the Bankruptcy Court's decision to allow Auto Shine's claim, notwithstanding his invocation of the doctrine of strict foreclosure. Specifically, the Trustee argues that the Bankruptcy Court: (1) applied an incorrect burden of proof; (2) committed clear error by finding that he failed to produce substantial evidence of the invalidity of Auto Shine's claim; (3) committed clear error by failing to find that Auto Shine took possession of substantially all the assets of Sales and Service, thus precluding Auto Shine's claim under the strict foreclosure doctrine, see N.H. REV. STAT. ANN. ("RSA") 382-A:9-505 (§ 9-905 of the Uniform Commercial Code ("UCC")); and (4) committed legal error by failing to properly apply controlling precedent (Lamp Fair, Inc. v. Perez-Oritz, 888 F.2d 173 (1st Cir. 1989), and Banker v. Upper Valley Refrigeration Co., 771 F. Supp. 6 (D.N.H. 1991)), which compels a decision in his favor.

I.   Burden of Proof

The Trustee argues that the Bankruptcy Court's decision should be reversed, and the case remanded, because the Bankruptcy Court committed an error of law when it ruled that "the burden [was] on [him] to establish that Auto Shine's claim in the Debtor's bankruptcy case should be completely offset by Auto Shine's retention of corporate assets" (Mem. Op. at 12), and by finding that the Trustee had not "sustained his burden of establishing that Auto Shine's actions constituted strict foreclosure" (Mem. Op. at 16).

The Bankruptcy Court applied the correct burden of proof. "A claim [by a creditor of a bankruptcy debtor], . . . proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f); see also Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993). "In order to rebut the presumption that attaches to a

7

proof of claim, a party objecting must produce "'substantial evidence.'" United States v. Clifford (In re Clifford), 255 B.R. 258, 262 (D. Mass. 2000) (citing In re Hemingway, 993 F.2d at 925). "If the objecting party sufficiently rebuts the claimant's prima facie case, the burden shifts back to the claimant as it is ultimately 'for the claimant to prove his claim, not for the objector to disprove it.'" In re G. Marine Diesel Corp., 155 B.R. 851, 853 (Bankr. E.D.N.Y. 1993) (quoting In re Gorgeous Blouse Co., 106 F. Supp. 465, 465 (S.D.N.Y. 1952)); see also In re Hemingway, 993 F.2d at 925 ("Once the trustee manages the initial burden of producing substantial evidence . . . the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim.") (citations omitted).

Notwithstanding the well-established burden-shifting scheme outlined above, one additional rule applies. In Raleigh v. Illinois Department of Revenue, the United States Supreme Court explained that "[t]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims." 530 U.S. 15, 20 (2000) (quoting Butner v. United States, 440 U.S. 48, 57 (1979)).

8

The substance of a claim, in turn, includes its burden of proof. Raleigh, 530 U.S. at 20-21 (citations omitted). The Court went on to explain that "[u]nless some federal interest requires a different result, there is no reason why [the state] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Raleigh, 530 U.S. at 20 (quoting Butner, 440 U.S. at 55) (alteration in the original). Based on those principles, the Raleigh court held that when the Illinois Department of Revenue made a claim against a bankruptcy estate, the trustee bore the burden of proof because the Illinois tax code placed the burden of proof on the taxpayer when he or she has been served with a notice of deficiency. 530 U.S. at 17. While the underlying state law at issue in Raleigh was the Illinois tax code, its holding has been applied in other state-law contexts as well. See, e.g., In re Cantrell, 270 B.R. 551, 556 n.13 (Bankr. D. Conn. 2001) ("With respect to the standard of proof required to establish the existence of the [resulting] trust, the same standard applies in bankruptcy as outside of bankruptcy.").

In light of <u>Raleigh</u>'s holding that "one who asserts a claim is entitled to the burden of proof that normally comes with it," 530 U.S. at 21, it is necessary to examine the state-law basis for Auto Shine's claim in order to determine the burden of proof to which Auto Shine is entitled. Both parties agree that Auto Shine's rights as a secured creditor are governed by New Hampshire's version of UCC (before the amendments effective on July 1, 2001).

Under New Hampshire's UCC, a secured creditor has three avenues of recourse against a debtor in default. First, the secured creditor may "reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." RSA 382-A:9-501(1) (1994). Second, the secured creditor "may take possession of the collateral," RSA 382-A:9-503 (1994), "sell, lease or otherwise dispose of any or all of the collateral," RSA 382-A:9-504(1) (1994), and then apply the proceeds to "the satisfaction of indebtedness secured by the security interest under which the disposition is made," RSA 382-A:9-504(1)(b) (1994). Or, third,

10

a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. <u>Written notice of such proposal shall be sent to the debtor</u> and except in the case of consumer goods to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or is known by the secured party in possession to have a security interest in it. If the debtor or other person entitled to receive notification objects in writing within 30 days from the receipt of the notification or if any other secured party objects in writing within 30 days after the secured party obtains possession the secured party must dispose of the collateral under Section 9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

RSA 382-A:9-505(2) (emphasis added). Section 9-505(2) of the UCC is alternatively known as "the 'retention' or 'strict foreclosure' option." <u>LaRoche v. Amoskeag Bank</u> (<u>In re LaRoche</u>), 969 F.2d 1299, 1303 (1st Cir. 1992).

The legal effect of exercising the retention or strict foreclosure option has been described as follows:

[t]he Code makes clear . . . that retention of the collateral normally <u>completely satisfies</u> the debt; the secured party <u>must abandon</u> any claim for deficiency (unless the debtor signs a written statement permitting such a claim . . .). U.C.C. § 9-505, comment 1; 2 J. White and R. Summers, <u>Uniform Commercial Code</u> 585; <u>Tanenbaum v. Economics Laboratory, Inc.</u>, 628 S.W.2d 769, 771 (Tex. 1982). The Code also states that the

11

> secured party must give notice of its intention to retain the collateral in satisfaction of the obligation, so that the debtor may object to retention and demand that the collateral be sold.

Lamp Fair, 888 F.2d at 176 (interpreting Connecticut's UCC) (emphasis in the original); see also Banker, 771 F. Supp. at 8 ("The New Hampshire U.C.C. provisions applicable to the instant case [§§ 501, 504, and 505 of Article 9] are identical in all material respects to those construed in Lamp Fair, and this Court is unaware of any reason why New Hampshire's reading of these provisions would differ from Connecticut's.").

The § 9-505 retention option provides a method for satisfying a secured debt, but it also provides an affirmative defense that may be raised by a debtor when a creditor attempts to use the § 9-501 reduction-to-judgment option. See, e.g., LaRoche, 969 F.2d at 1302 ("LaRoche raised the defense of payment [to Amoskeag's action to collect on a debt], arguing that Amoskeag's reregistration of the pledged shares . . . constituted a proposal to accept and retain the collateral in full satisfaction of the indebtedness pursuant to Article 9 of the New Hampshire Uniform Commercial Code."); Lamp Fair, 888 F.2d at 174-

12

75 (defendant/debtor asserted § 9-505 as defense against plaintiff/creditor's suit for judgment on the debt); Banker, 771 F. Supp. at 7 (same).

Here, Auto Shine's claim against the bankruptcy estate constitutes an "available judicial procedure" for purposes of § 9-501, which makes the Trustee's § 9-505 argument an affirmative defense. The debtor would bear the burden of proof with respect to that defense outside the bankruptcy context. Because the Trustee's invocation of § 9-505 is an affirmative defense to Auto Shine's § 9-501 claim, the burden does not shift back to Auto Shine to prove that it did not retain collateral in full satisfaction of Campano's debt; the burden remains on the Trustee to prove that Auto Shine did retain collateral in full satisfaction of that debt. See Raleigh, 530 U.S. at 17 ("bankruptcy does not alter the burden imposed by the substantive law"); see also 4 COLLIER ON BANKRUPTCY (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) ¶ 502.02[3][f] ("The trustee bears the burden of proving any affirmative defenses . . .").[3]

_____

[3] Several state courts have ruled that the debtor bears the burden of proving that a creditor availed itself of the § 9-505 retention option. In Munao v. Lagattuta, the Appellate Court of Illinois held that "[a]bsent written notice [from a creditor

13

Accordingly, the Bankruptcy Court did not incorrectly shift the burden of proof when it ruled that the Trustee failed to establish that Auto Shine's claim was barred by the strict forfeiture doctrine. It was the trustee's burden to establish full satisfaction, not Auto Shine's burden to disprove it.

II.  Substantial Evidence of the Invalidity of Auto Shine's Claim

The Trustee also argues that the Bankruptcy Court incorrectly determined that he failed to produce substantial evidence that Auto Shine retained its collateral in full satisfaction of Campano's debt. There is no need to address the Trustee's argument on substantial evidence because the Bankruptcy Court never decided that the Trustee failed to carry his burden

indicating its intention to proceed under § 9-505], a debtor . . . has the burden of establishing that the parties agreed to a retention of the collateral in full satisfaction of the debt," 691 N.E.2d 818, 822 (Ill. App. Ct. 1998); see also IFG Leasing Co. v. Gordon, 776 P.2d 607, 614 n.32 (Utah 1989) (citations omitted); Nelson v. Armstrong, 582 P.2d 1100, 1108 (Idaho 1978) (explaining that § 9-505(2) is "a statutory analogue to the common law concept of accord and satisfaction" under which burden is on the debtor to "show[] that the creditor definitely assented to that arrangement") (citations omitted). In New Hampshire, as in Idaho, the burden of proving an accord and satisfaction is on the defendant who asserts accord and satisfaction as a defense against an action for breach of contract. See, e.g., Post Road Realty, Inc. v. Zee-Bar, Inc., 117 N.H. 136, 139 (1977) (citations omitted); Kramas v. Beattie, 107 N.H. 321, 324 (1966) (citing 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS, § 1280 (1962)).

of production.  Rather, the Bankruptcy Court necessarily found that the Trustee did meet his burden of production, because the Court went on to resolve the Trustee's strict foreclosure argument on its merits.  Accordingly, the Trustee's second ground for appeal is unavailing.

III. <u>Strict Foreclosure on the Merits</u>

As a preliminary matter, it is not at all clear that the Trustee is entitled to assert strict foreclosure, because Auto Shine concededly never provided Campano with written notice of a proposal to avail itself of the § 9-505(2) retention option.

Notwithstanding the explicit notice requirement in § 9-505(2), a majority of courts have taken the view that a secured party's conduct can, under appropriate circumstances, bring a transaction with a debtor "within the scope of the § 9-505(2) 'retention option,' irrespective of whether or not [the secured party] consciously chose to invoke this option."  <u>Lamp Fair</u>, 888 F.2d at 176 (citations omitted).  In a case that post-dated <u>Banker</u>, the New Hampshire Supreme Court recognized that some courts have found implicit retention "where the secured party

15

retains the collateral for 'an unreasonable period of time' without written notice of intent . . . or when 'the secured party, by his actions, manifest[s] an intent to retain the collateral in satisfaction of the obligation." Jenkins v. G2S Constructors, Inc., 140 N.H. 219, 227 (1995) (quoting Cohen v. Rains, 769 S.W.2d 380, 387 (Tex. Ct. App. 1989)). The Court, however, stopped short of adopting either of those "methods for avoiding strict compliance with the written notice provisions of RSA 382-A:9-505," because it was able to resolve the question before it on other grounds. Jenkins, 140 N.H. at 227. In other words, the New Hampshire Supreme Court has not yet read the notice requirement out of RSA 382-A:9-505(2), and may not do so. See LaRoche, 969 F.2d at 1303 (noting that party seeking to rely on strict foreclosure doctrine conceded that secured party did not give written notice, but contended "that the New Hampshire courts may yet adopt an alternative interpretation of U.C.C. § 9-505(2), which might save the day").

The Trustee faces two difficult problems – first, no notice was given, and, second, even if the New Hampshire Supreme Court would hold that written notice is not strictly required, and

16

would recognize strict foreclosure by implication, the Trustee still would not prevail in this case.

### A. Factual Matters

The Trustee argues that the following factual findings by the Bankruptcy Court, relevant to strict foreclosure by implication, were clearly erroneous:

- that Auto Shine did not take possession of substantially all of Sales and Service's assets

- that most of the equipment and inventory removed by White and Mattia on March 28, 2001, had been previously paid for by customers; and

- that most, if not all, of the equipment and inventory removed by White and Mattia was installed at customer sites before they went to work for Car Wash.

Based upon the record developed at the July 29, 2002, hearing, this court's deferential standard of review on factual matters, and, given the Trustee's burden of proving that Auto Shine retained its collateral in full satisfaction of Campano's debt, and, even in light of the April 6, 2001, letter in which DiTommaso's attorney stated "[his] understanding that Mr. Campano has voluntarily surrendered substantially all of the corporate assets to Mr. DiTommaso, a secured creditor," it was still not

clearly erroneous for the Bankruptcy Court to find that Auto Shine did not retain substantially all of Sales and Service's business assets.  For example, Auto Shine never obtained Sales and Service's receivables, nor did it retain or otherwise control the items of inventory installed by White and Mattia in the interval between the end of Sales and Service and the formation of Auto Shine.  Given the assets that Auto Shine never possessed (i.e., the receivables), the assets it possessed but never used (i.e., the telephone system and computers), and the equipment and inventory that DiTommaso purchased in order to get Car Wash off the ground, the two remaining factual determinations are not critical to determining the ultimate question, which is whether Auto Shine retained its collateral in full satisfaction of Campano's debt.  Accordingly, no basis exists upon which to set aside the Bankruptcy Court's findings of fact.

    B.    Legal Questions

The Trustee also argues that the Bankruptcy Court committed legal error by: (1) ruling, by implication, that pre-paid inventory items were not subject to the claims of secured creditors; and (2) failing to correctly apply the holdings in

18

<u>Lamp Fair</u> and <u>Banker</u>.  The Bankruptcy Court committed no error of law.

It was not clearly erroneous for the Bankruptcy Court to find that Auto Shine did not retain substantially all of Sales and Service's business assets, regardless of the status of the disputed inventory.  Therefore, any legal error in characterizing that inventory would be harmless.  But, perhaps more importantly, as the Trustee himself acknowledges, the Bankruptcy Court did not issue any ruling of law with respect to the pre-paid inventory.  Even if the Trustee's legal argument about the status of the pre-paid inventory is correct, there is simply no ruling of law to be reversed.

The Bankruptcy Court also correctly distinguished <u>Lamp Fair</u> and <u>Banker</u>.  The creditors in those cases retained substantially all the business assets of their respective debtors.  Auto Shine did not retain substantially all of Sales and Service's business assets.  Moreover, the record discloses that for some months after Sales and Service went under, and Campano found other employment, Campano continued to work on several accounts for Car

19

Wash, with the understanding that if he were able to bring sufficient new business to Car Wash, Auto Shine might release its mortgage on his home.  Thus, Campano's own conduct refutes his current claim that Auto Shine had been fully satisfied by retention of Sales and Service's business assets.

## Conclusion

For the reasons given, the order of the Bankruptcy Court is affirmed.

**SO ORDERED.**

 

_____
Steven J. McAuliffe
United States District Judge

May 29, 2003

cc:  Deborah A. Notinger, Esq.
     Jack B. Little, Esq.
     George Vannah, Clerk, US Bankruptcy Court
     Daniel S. Campano